# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 625-3900
FACSIMILE (213) 232-3255
GERAGOS@GERAGOS.COM

Attorneys for Plaintiff JASMINE VANCE, individually
and on behalf of all others similarly situated.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JASMINE VANCE,** individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**SHOWTIME NETWORKS INC.**, and **SHOWTIME DIGITAL INC**.<br><br>　　　　　Defendants. | Civil Action No.: 1:17-cv-6894<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

# CLASS ACTION COMPLAINT

Plaintiff Jasmine Vance ("Plaintiff"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on her personal knowledge:

## NATURE OF THE ACTION

1. This is a class action on behalf of all persons who purchased the Showtime pay per view ("PPV") live stream to view the August 26, 2017 Floyd Mayweather, Jr. vs. Conor McGregor fight and undercard through the Showtime app, Showtime PPV website, or through any other means or media. As a result of server failure or other technical failures on Defendants' part, Plaintiff and the Class were unable to view the Mayweather fight, and some Class Members were unable to view substantial portions of the entire Mayweather fight.

## THE PARTIES

2. Defendant Showtime Networks Inc. is a corporation organized and existing under the laws of Delaware, having its principal place of business at 1633 Broadway, New York, New York 10019.

3. Defendant Showtime Digital Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 1633 Broadway, New York, New York 10019. Upon information and belief, Showtime Digital Inc. is a wholly-owned subsidiary of Showtime Networks, Inc. Showtime

Networks, Inc. and Showtime Digital Inc. will collectively be referred to as the "Defendants" or "Showtime."

4. Plaintiff Jasmine Vance ("Plaintiff") is a citizen and resident of the State of Ohio. Like thousands (or more) of other fight fans across the country, Plaintiff paid to stream the Mayweather fight live through the Showtime app. Plaintiff was not able to view the Mayweather fight. Defendants' PPV service had technical and/or other failures and did not stream the Mayweather fight. Plaintiff continuously experienced a screen with an error message while accessing Defendants' PPV service and was unable to watch the Mayweather fight.

## JURISDICTION AND VENUE

5. This Court has diversity jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), in that the aggregate claims of Plaintiff and members of the Class exceed the sum or value of $5,000,000, and diversity of citizenship exists between at least one member of the proposed Class and Defendants.

6. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a substantial part of the events giving rise to Plaintiff and Class Members claims occurred in this District as Defendants: (a) have their principal places of business in this District; (b) are authorized to conduct business in this District and have intentionally availed itself to the laws within this District; (c) currently do substantial business in this District; and (d) are subject to personal jurisdiction in this District.

# FACTUAL ALLEGATIONS

7. On August 26, 2017, in response to Defendants' offering of the live stream of the Mayweather fight, Plaintiff paid $99.99 (before tax) for Defendants' live stream of the Mayweather fight through the Showtime PPV app. Plaintiff's receipt is shown below**:**



8. On August 26, 2017, the Mayweather fight took place in Las Vegas, Nevada.

9. The Mayweather fight was advertised and promoted extensively by the Defendants.

10. Defendants' advertisement in iTunes below represented that consumers could witness history through live streaming access to the most anticipated sporting event of the year.



11. Defendants also ran other advertisements for the Mayweather fight which made clear that the Mayweather fight could be purchased for viewing live from Showtime.

12. Many articles also announced that the Mayweather fight could be streamed live through Showtime using the Showtime PPV app, Showtime PPV, or through other media.

13. Unlike past big events like Mayweather vs. Pacquiao in 2015, the Mayweather fight was the first major fight available on pay-per-view without a cable subscription.

14. On the evening of August 26, 2017, Plaintiff endeavored to access Defendants' PPV service through an Amazon Fire TV Stick to watch the Mayweather fight. To her extreme disappointment and frustration, Plaintiff quickly learned that Defendants' system was defective and unable to stream the Mayweather fight as Defendants had advertised. Instead of being a "witness to history" as Defendants had promised, Plaintiff first could not load the app through the Amazon Fire TV Stick, notwithstanding several attempts and many hours spent on endeavoring to load the Showtime PPV app to it. Then, Plaintiff downloaded the app to her phone and the app continuously gave her an error message stating "expected status code in (200-299), got 429." Due to the problems with Defendants' defective service, Plaintiff was unable to watch the Mayweather fight.

15. Plaintiff had a gathering in her home to watch the Mayweather fight for which she spent sums on food and beverages, and given the failure of the Defendants to live stream the Mayweather fight, many of her guests left and Plaintiff was left with unused food and beverages.

Case 1:17-cv-06894-DLC     Document 1     Filed 09/11/17     Page 7 of 17

16. Plaintiff contacted Defendants for a refund for her purchase and she has not received a refund.

17. There were at least hundreds of complaints being tweeted by Defendants' other PPV customers in real time during the Mayweather fight experiencing the same issue with Defendants' defective service. Some examples appear below:



18. In addition to the hundreds or more complaints that appeared on Twitter, numerous complaints about Showtime's service also appeared on various message internet message and complaint boards during and after the Mayweather fight.

## CLASS ALLEGATIONS

19. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a), (b) (1) and (b) (3) on behalf of the following consumer class and sub-class:

> **The Class**: All persons in the United States who purchased the Showtime PPV live stream of the Mayweather fight, for viewing through the Showtime PPV app, the Showtime PPV website, or through any other means or media. Excluded from the Class are Defendants, their parents, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.
>
> **The Sub-Class:**
> All persons in New York who purchased the Showtime PPV live stream of the Mayweather fight for viewing through the Showtime PPV app, Showtime PPV website, or through any other means or media. Excluded from the Sub-Class are Defendants, their parents, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over

   this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

20. This action is brought, and may properly be maintained, as a class action under Fed. R. Civ. P. Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable. This action satisfies the predominance, typicality, numerosity, superiority, and adequacy requirements of these provisions.

(a) **Numerosity**: The plaintiff class is so numerous that the individual joinder of all members is impractical under the circumstances of this case. While the exact number of Class Members is unknown to Plaintiff at this time, Plaintiff is informed and believes, and based thereon alleges, that over one-thousand (1,000) persons purchased tickets for Defendants' live stream of the Mayweather fight.

(b) **Commonality**: Common questions of law and fact exist as to all members of the plaintiff class and predominate over any questions that affect only individual members of the class. The common questions of law and fact include, but are not limited to:

(i) Whether Defendants engaged in deceptive conduct about the live stream of the Mayweather fight;

(ii) Whether Defendants breached any contractual obligations to ticket buyers of the live stream of the Mayweather fight; and

(iii) Whether Defendants were unjustly enriched by taking and keeping money for a service that was not provided.

(c) **Typicality**: Plaintiff's claims are typical of the claims of the Class Members. Plaintiff

and the members of the class sustained damages arising out of Defendants' wrongful conduct as alleged herein.

(d) **Adequacy**: Plaintiff will fairly and adequately protect the interests of the members of the class. Plaintiff has no interest that is adverse to the interests of the other Class Members.

(e) **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Because individual joinder of all members of the class is impractical, class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without unnecessary duplication of effort and expense that numerous individual actions would engender. The expenses and burdens of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while important public interests will be served by addressing the matter as a class action. The cost to and burden on the court system of adjudication of individualized litigation would be substantial, and substantially more than the costs and burdens of a class action. Class litigation would also prevent the potential for inconsistent or contradictory judgments.

(f) **Public Policy Considerations**: When a company or individual engages in wrongful conduct with large swaths of consumers, it is often difficult or impossible for the vast majority of those consumers to bring individual actions against the offending party. Many consumers are either unaware that redress is available, or unable to obtain counsel to obtain that redress for financial or other reasons. Class actions provide the class members who are not named in the complaint with a vehicle to achieve vindication of their rights. The members of the class are so numerous that the joinder of all members would be impractical and the disposition of their claims in a class

action rather than in individual actions will benefit the parties and the court. There is a well-defined community of interest in the questions of law or fact affecting the Class in that the legal questions are common to the Class Members. The factual questions relating to Defendants' wrongful conduct and their ill-gotten gains are also common to the Class Members.

## COUNT I
## (BREACH OF CONTRACT)

21. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein..

22. Plaintiff and the Class entered into contracts with Defendants to view the Mayweather fight through Defendants' live stream in exchange for money. Plaintiff and the Class provided payment to Defendants in consideration for Defendants' promise to provide a live stream of the Mayweather fight.

23. Instead, Defendants breached the contracts by failing to provide a complete viewing of the Mayweather fight.

24. As a result of Defendants' breach of contract, Plaintiff and the Class have been damaged thereby.

## COUNT II
## (VIOLATION OF NEW YORK GBL § 349)

25. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

26. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . . ."

27. Defendants were and are doing business in the State of New York and thus are subject to New York law for the incidents described in this action.

28. Defendants misleadingly, inaccurately, and deceptively presented their live streaming service of the Mayweather fight to consumers.

29. Defendants' improper and deceptive consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced consumers, including Plaintiff, to purchase Defendants' live streaming service of the Mayweather fight. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

30. As a result of Defendants' acts and omissions, Plaintiff and the Class were damaged when they paid to watch the Mayweather fight and were unable to do so.

31. Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class have been damaged thereby.

- 12 -

## COUNT III

## (VIOLATION OF NEW YORK GBL § 350)

32. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

33. N.Y. Gen. Bus. Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

34. N.Y. Gen. Bus. Law § 350-a(1) provides, in part, as follows: "The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . ."

35. Defendants were and are doing business in the State of New York and thus are subject to New York law for the incidents described in this action.

36. Defendants' advertisements contain untrue and materially misleading

statements concerning Defendants' live streaming service of the Mayweather fight inasmuch as it misrepresented that live streaming would be provided.

37. Defendants knew and should have known their system was not able to provide the service that the Class Members purchased, based on Defendants' available bandwidth and subscriber numbers. Defendants intentionally misrepresented that it could provide the service and knowingly failed to disclose that their system was defective and unable to provide the service.

38. Plaintiff and the Class have been injured inasmuch as they relied upon the advertising and paid a fee for the live streaming service of the Mayweather fight which—contrary to Defendants' representations—was not provided. Accordingly, Plaintiff and the Class received less than what they bargained and/or paid for.

39. Defendants' advertising induced the Plaintiff and the Class to buy Defendants' live streaming service of the Mayweather fight.

40. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

41. Defendants' conduct constitutes violations of N.Y. Gen. Bus. Law § 350.

///

///

## COUNT IV
## (UNJUST ENRICHMENT)

42. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

43. Plaintiff and members of the Class conferred benefits on Defendants by purchasing the live streaming service.

44. Defendants have been unjustly enriched in retaining revenues derived from Plaintiff's and Class Members' purchases of the live streaming service.

45. As a matter of justice and equity, Defendants should not be able to retain the pay-per-view fees they charged Plaintiff and the Class Members for live streaming services that were never provided or received. Plaintiff and the Class Members are entitled to restitution based on Defendants' unjust enrichment as alleged in this complaint.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

///

///

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

A. Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as the Class representative, and appoint the undersigned as Class counsel;

B. Issue a Judgment finding in favor of Plaintiff and the Class on all counts asserted herein;

C. Order Defendants to pay Plaintiff and other members of the Class all actual, consequential, statutory and/or treble damages and punitive damages in an amount to be determined at trial, including restitution, interest, and disgorgement of all amounts paid by Plaintiff and other members of the Class to Defendants for the Mayweather Fight, as well as any applicable interest;

D. Issue an order granting Plaintiff's reasonable costs, expenses and attorney's fees including expert fees; and

E. Grant in favor of Plaintiff and the Class such other relief as may be just and proper.

DATED: September 11, 2017          **GERAGOS & GERAGOS, APC**

                                          By:   /s/ LORI G. FELDMAN
                                                  LORI G. FELDMAN (LF 3478)
                                                  7 West 24th Street
                                                  New York, New York 10010
                                                  Telephone: (213) 625-3900
                                                  Facsimile: (213) 232-325
                                                  lori@geragos.com

|   |   |
|---|---|
| 1 | |
| 2 | MARK J. GERAGOS, pro hac forthcoming |
| 3 | geragos@geragos.com |
| 4 | BEN J. MEISALAS, pro hac forthcoming<br>ben@geragos.com |
| 5 | Historic Engine Co. No. 28 |
| 6 | 644 South Figueroa Street,<br>Los Angeles, CA 90017 |
| 7 | Telephone: (213) 625-3900<br>Facsimile: (213) 232-3255 |


1

MARK J. GERAGOS, pro hac forthcoming
geragos@geragos.com
BEN J. MEISALAS, pro hac forthcoming
ben@geragos.com
Historic Engine Co. No. 28
644 South Figueroa Street,
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 232-3255

MICHAEL FULLER, pro hac forthcoming
Olsen Daines PC
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Direct 503-201-4570

BONNER C. WALSH, pro hac forthcoming
Walsh PLLC
PO Box 7
Bly, Oregon 97622
bonner@walshpllc.com
Phone 541.359.2827
Facsimile 866.503.8206

Attorneys for Plaintiff JASMINE VANCE, individually and as the representative of a class of similarly-situated persons

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. NO. 28
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411